# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 17 C 6922 |
| v. ) | |
| ) | Judge John Z. Lee |
| JONAS M. EDMONDS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Jonas M. Edmonds ("Edmonds") has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons stated herein, Edmonds's motion is denied.

### I.  Factual Background

In January 2015, Hasan Edmonds ("Hasan"), who is Edmonds's cousin and codefendant, was a member of the Army National Guard assigned to a unit in the Northern District of Illinois, when he began online communications with someone he believed to be a fighter for the Islamic State of Iraq and the Levant ("ISIL") in Libya. Plea Agreement at 3, No. 15 CR 149, ECF No. 54. In fact, the person was an FBI employee. *Id.*

During these communications, Hasan expressed support for ISIL and indicated a desire to travel to the Middle East with Edmonds to fight for ISIL. *Id.* He also gave the employee advice on fighting and defeating the U.S. military, and

stated that he and Edmonds were willing to carry out an attack in the United States if ordered to do so. *Id.*

A confidential law-enforcement source then introduced Edmonds to another undercover FBI employee ("UC"), who Edmonds believed could assist them in their plan to travel abroad to support ISIL. *Id.* at 4. As part of this plan, Hasan purchased a plane ticket to Cairo, Egypt on March 11, 2015. And on March 23, 2015, he and Edmonds met with UC to discuss what steps they could take to support ISIL. *Id.* at 4–5.

During that meeting, Edmonds informed UC that, once Hasan left for Egypt, Edmonds planned to attack the National Guard base to which Hasan was assigned. *Id.* at 5. Edmonds also said that he anticipated a "body count" of between 100 and 150 people, and Hasan offered to provide a list of "rankings" of officers for Edmonds to kill. *Id.* Hasan also offered to provide Edmonds with military uniforms to wear as a disguise during the attack. *Id.*

On March 24, 2015, Edmonds and Hasan, along with UC, drove to Hasan's National Guard base in Joliet, Illinois to conduct surveillance and plan for the attack. *Id.* On the way there, Edmonds and Hasan discussed with UC how they would acquire the necessary weapons and conduct the attack. *Id.* Once they arrived outside the base, they also reviewed where the National Guard members conducted their training on the base. *Id.* Hasan then described the interior of the base and what rooms Edmonds needed to avoid during the attack. *Id.* at 6. He also

entered the base and retrieved a unit training schedule, which he provided to Edmonds for the purpose of determining the best day for the planned attack. *Id.*

The following day, Edmonds drove Hasan to Chicago Midway Airport, so that Hasan could travel to the Middle East to fight for ISIL. *Id.* Edmonds then proceeded to Hasan's residence and retrieved several National Guard uniforms, which he planned to wear for the attack. *Id.* Both Edmonds and Hasan were arrested later that day. *See* Orders of 3/26/15, No. 15 CR 149, ECF Nos. 7, 10.

After his arrest, Edmonds was interviewed by FBI agents, who asked him whether he had ever helped anyone travel overseas to support ISIL. Plea Agreement at 7. Edmonds responded that he had dropped Hasan off at the airport to travel to Egypt because "he's going to visit a friend or wherever he's going. I don't know. Somebody, he's trying to move there." *Id.* He further stated that Hasan was traveling to Egypt to see if he liked it, and that he would be coming back. *Id.* Edmonds made these statements despite knowing that Hasan was, in fact, traveling to Egypt for the purpose of fighting for ISIL. *Id.*

## II.  **Procedural Background**

On December 4, 2015, Edmonds was charged in a superseding information with one count of conspiring to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count One), and one count of making a materially false statement to a law enforcement officer regarding an offense involving international terrorism, in violation of 18 U.S.C. § 1001(a)(2) (Count Two). *See* Superseding Info., No. 15 CR 149, ECF No. 50. On December 9,

2015, he pleaded guilty to both counts pursuant to a written plea agreement. *See* Order of 12/9/15, No. 15 CR 149, ECF No. 53; Plea Agreement. As part of the plea agreement, Edmonds agreed that certain sentencing enhancements under the United States Sentencing Guidelines ("USSG") applied, including—as relevant here—USSG §§ 3A1.2 and 3A1.4(a).[1] *See* Plea Agreement at 9–10.

Seeking to vacate the judgment, Edmonds filed his § 2255 motion on September 26, 2017. *See* § 2255 Mot., ECF No. 1.

### III. Legal Standard

Section 2255 provides that a criminal defendant is entitled to relief from his conviction and sentence if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013). Furthermore, the Court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 225(b).

---

[1] USSG § 3A1.2 increases the offense level by three, if the victim of the offense was a government officer or employee, and the offense of conviction was motivated by such status. USSG § 3A1.4(a) increases the offense level by 12, if the offense is "a felony that involved, or was intended to promote, a federal crime of terrorism."

4

## IV. Analysis

Edmonds claims that the assistance that he received from his trial counsel was constitutionally deficient for two reasons. First, he claims that his attorney "erroneously advised and [misled] [him] into believing that selective enforcement was not a viable defense" to the charges against him. Second, Edmonds claims that his attorney "coerced [him] into pleading guilty." *See* Mem. Supp. § 2255 Mot. at 8, 11, ECF No. 7.

To succeed on either ineffective assistance of counsel claim, Edmonds must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that his attorney's performance was constitutionally deficient insofar as it "fell below an objective standard of reasonableness" as measured against "prevailing professional norms." *Id.* at 688. Second, he must show that any error made by his attorney caused him prejudice. *Id.* at 692. Furthermore, on *habeas* review, a court's "review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014) (citations omitted). For the reasons provided herein, the Court concludes that Edmonds cannot satisfy the *Strickland* standard for either claim.

### A. Selective Enforcement

Edmonds first argues that his attorney was ineffective for failing to pursue a selective-enforcement defense to "challenge the government's charges." Mem. Supp. § 2255 Mot. at 10. To support this claim, he submits a portion of a memorandum

addressing selective enforcement in terrorism cases, as well as a newspaper article discussing domestic terrorism. *See generally* § 2255 Mot., Ex. E; *id.*, Ex. F. Neither of these documents establishes that Edmonds is entitled to *habeas* relief.

To prevail on a claim of selective enforcement, a petitioner must show that the law-enforcement actions at issue "had a discriminatory effect" and "[were] motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (internal quotation marks omitted).[2] In other words, a petitioner must establish that (1) other similarly-situated persons were not investigated by law enforcement, and (2) the basis for the investigation was some impermissible classification such as race, religion, or the exercise of constitutional rights. *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996).

The memorandum attached to Edmonds's petition argues that "Islamic extremists" are disproportionately "targeted and prosecuted by the FBI in their reverse terror stings," even though "non-Islamic extremists have committed more attacks" and are "more susceptible to commit acts of violence or engage in terrorist activities." Mem. Supp. § 2255 Pet., Ex. E, at 11–12. In support, it cites to various statistics about the number of fatal attacks carried out by Islamic extremists as compared to "non-Islamic extremists." But such broad characterizations, without more, fall short of demonstrating that "similarly-situated defendants of other [religions] could have been [investigated] but were not." *United States v. Hayes*, 236 F.3d 891, 895 (7th Cir. 2001).

---

[2] While *Armstrong* is a selective-prosecution case, "the same analysis governs both" selective-prosecution and selective-enforcement claims. *United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002).

*Armstrong* is instructive. 517 U.S. 456. There, the respondents, who were black, claimed that the United States Attorney's Office for the Central District of California was selectively targeting black individuals for prosecution in crack cocaine cases. In support, they submitted an affidavit by a paralegal from the Federal Public Defender's Office, as well as an accompanying "study," that stated that all of the twenty-four crack cocaine cases closed by the government that year were against black defendants. *Armstrong*, 5178 U.S. at 459. Based on this evidence, the respondents sought discovery from the government under Fed. R. Crim. 16.

The district court and the Ninth Circuit (siting *en banc*) agreed. But the Supreme Court reversed. Noting that the respondents had to "show that similarly situated individuals of a different race were not prosecuted," *id.* at 455, the Supreme Court found the submitted affidavit and "study" lacking, because they "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted," *id.* at 470.

Here, too, Edmonds fails to identify a single person of another religion who was similarly situated to him but was not subjected to the same enforcement tactics that the government utilized here. *See also United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (noting that the Supreme Court in *Armstrong* "insisted that the defendant produce evidence that persons of a different race, but otherwise comparable in criminal behavior, were presented to the United States Attorney for

prosecution, but that prosecution was declined."). And, because "[f]ailure to raise a losing argument . . . does not constitute ineffective assistance of counsel," *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996), Edmonds is not entitled to relief on the grounds that his attorney did not pursue a selective enforcement argument in this case.

Relatedly, to the extent Edmonds argues that counsel was ineffective for not raising an entrapment defense and analogizing to "stash house cases," [3] his argument also fails. To prevail on such a defense, a defendant must show government inducement and a lack of predisposition. *United States v. Mayfield*, 771 F.3d 417, 431 (7th Cir. 2014). Here, the opposite was true. The idea of assisting Hasan's travel to join ISIL, as well as the idea to attack the National Guard base, originated with Edmonds and Hasan. *See* Plea Agreement at 2–7. At his change-of-plea hearing, Edmonds admitted these facts, *see* 12/9/15 Tr. at 24:22–25:1, and that admission is presumptively truthful, *see United States v. Moody*, 770 F.3d 577, 581–82 (7th Cir. 2014). Nor has Edmonds offered any evidence to overcome that presumption. In light of these facts, it was reasonable for Edmonds's counsel to decide not to pursue an entrapment defense.

## B. Guilty Plea

In addition, Edmonds raises several concerns regarding his guilty plea. He argues that his attorney provided ineffective assistance (1) by "coercing" him into pleading guilty using "threats" of a superseding indictment, and (2) for not objecting

---

[3] Such cases typically involve a government actor introducing a subject to the idea of robbing a nonexistent drug "stash" house. *See generally Ward v. United States*, 858 F.3d 1072, 1073–74 (7th Cir. 2017).

to certain sentencing enhancements provided for in the plea agreement. *See generally* Mem. Supp. § 2255 Mot. at 8–13.

1. **Superseding Indictment**

Edmonds contends that his attorney relayed "false threats based upon the possibilit[y] of a super[s]eding indictment where there was no probable cause nor any conspiracy to be charged[.]" *Id.* at 10. Attached to Edmonds's petition are several letters from his attorney, informing Edmonds that the government was considering a superseding indictment for "much more serious" charges, including one for conspiracy to commit murder pursuant to 18 U.S.C. § 1117, but that the government would delay the return of such an indictment if plea negotiations continued. *See* Mem. Supp. § 2255 Mot., Ex. B; *id.*, Ex. C.; *id.*, Ex. D.

"[A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received was" constitutionally defective. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quotations omitted). Here, Edmonds contends he can meet this standard because his attorney "should have known that the threats from the government were hollow and without merit," Mem. Supp. § 2255 Mot. at 12, but the record in Edmonds's criminal case tells a different tale.

First, at Edmonds's sentencing hearing, the government specifically acknowledged that it indeed was considering bringing additional charges against him, but elected not do so given the plea agreement. 9/20/16 Tr. at 21:4–7, No. 15 CR 149, ECF No. 96. Second, although Edmonds insists that the government would

9

not have (and could not have) brought an additional charge of conspiracy to commit murder because it lacked probable cause, the facts as admitted by Edmonds would have been sufficient to establish probable cause for such a count under 18 U.S.C. § 1117.[4] That being the case, the Court finds that it was reasonable for Edmonds's counsel to warn him about the possibility of a superseding indictment and the consequences it could have in terms of sentencing.

### 2. Sentencing Enhancements

Edmonds also claims that his attorney provided ineffective assistance by failing to object to the application of sentencing enhancements under USSG §§ 3A1.2 and 3A1.4(a), which, Edmonds argues, are "not applicable and/or duplicitous." § 2255 Mot. at 5.[5] USSG § 3A1.2 increases the offense level by three levels where the intended victims of the crime were government officers or employees; § 3A1.4(a) increases the offense level by twelve levels, if the offense of conviction was a felony involving, or intending to promote, a federal crime of terrorism. Both of Edmonds's claims lack merit.

Turning first to the enhancement under § 3A1.2, the facts set forth in the plea agreement—which Edmonds admitted were true—clearly demonstrate that Edmonds and Hasan intended to carry out an attack on a National Guard base with

---

[4] Section 1117 states: "If two or more persons conspire to violate section 1111, 1114, 1116, or 1119 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life." 18 U.S.C. § 1117. Section 1114, in turn, prohibits the killing of any officer or employee of any agency or branch of the United States Government, including members of the uniformed services. *Id.* § 1114.

[5] Page numbers refer to the numbers in the upper-right corner of each page of the motion.

the goal of killing over 100 individuals, including military personnel. *See* Plea Agreement at 2–7; 12/9/15 Tr. at 18:24–25:1.

As to § 3A1.4(a), Edmonds pleaded guilty to violating 18 U.S.C. § 2339B, which prohibits the provision of material support to a foreign terrorist organization. And a violation of 18 U.S.C. § 2339B qualifies as a federal crime of terrorism. *See* 18 U.S.C. § 2332b(g)(5).

What is more, contrary to Edmonds's view, the two enhancements are not duplicitous; rather, each is tied to a distinct aspect of his conduct. The three level enhancement under § 3A1.2 was appropriate, given that the intended victims of Edmonds's attack were members of the National Guard. The twelve level enhancement under Section 3A1.4(a) was appropriate given that Edmonds's conduct was aimed at supporting a foreign terrorist group, ISIL. Given this, Edmonds cannot show that his attorney's decision not to challenge the application of these sentencing enhancements "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

### 3. "Coercion"

Finally, Edmonds notes throughout his petition that he was "coerced" to plead guilty. *See* § 2255 Mot. at 5–6, Mem. Supp. § 2255 Mot. at 1, 5, 7, 9, 11–12. It is clear, however, that these references to "coercion" relate to Edmonds's belief that a superseding indictment would not have been supported by probable cause, as well as his belief that his counsel should have raised a selective-enforcement defense[6]

---

[6] Edmonds asserts that he "need not prove that he would have prevailed on a selective enforcement defense at trial," and need only show that such a defense was "viable and

11

and objected to certain sentencing enhancements at sentencing. For the reasons discussed, Edmonds is not entitled to relief on any of those grounds, and his attorney's failure to raise these arguments, which have little, if any, merit, does not render counsel's actions coercive.

Moreover, any claim that Edmonds's counsel acted coercively in advising him to plead guilty is foreclosed by Edmonds's sworn statements during his plea colloquy. The Court asked Edmonds whether he was satisfied with the representation he had received, and Edmonds indicated that he was. 12/9/15 Tr. at 8:7–9. The Court also questioned Edmonds, under oath, regarding his decision to enter into the plea agreement:

> **Q:** Have you reviewed the document, or did you review the document before you signed it?
>
> **A:** Yes.
>
> **Q**: Did you discuss the contents of the document with your attorney before you signed it?
>
> **A:** Yes.
>
> **Q:** Is there anything in this document that you do not understand as you stand here today?
>
> **A:** No.
>
> **Q:** Did anyone threaten you or pressure you in any way to sign this document?
>
> **A:** No.

---

available" and that, had he known so, "he would not have ple[aded] guilty," Reply at 3, ECF No. 9. But for the reasons stated above, Edmonds cannot establish that his attorney's failure to raise this argument constituted ineffective assistance. And his attorney's reasonable decision not to pursue such an argument does not support a finding that Edmonds's plea was coerced.

> **Q:** Other than what is stated in this document, did anyone offer any additional promises or guarantees to you to induce you to sign the document?
>
> **A:** No.
>
> **Q:** Did you sign this plea agreement voluntarily and completely based upon your own free will?
>
> **A:** Yes.

*Id.* at 13:17–14:10.

Edmonds's sworn statements during his plea colloquy are entitled to a presumption of truth. *See Moody*, 770 F.3d at 581–82; *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) ("[R]epresentations made at a plea colloquy are under oath and are given a presumption of verity.") (internal quotation marks omitted). And there is nothing in the record that would overcome that presumption.

## Conclusion

For the reasons stated herein, Edmonds's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied. Because the "motion, files, and records of [this] case conclusively show that [Edmonds] is entitled to no relief," the Court finds that an evidentiary hearing is not necessary to adjudicate his claims. *Hutchings v. United States*, 618 F.3d 693, 699–700 (7th Cir. 2010) (citations and quotation marks omitted).

Furthermore, the Court finds that Edmonds has not made a substantial showing in his motions that his constitutional rights were denied. As such, Edmonds has not "demonstrate[d] that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong," *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (citation omitted), and the Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**  ENTERED: 4/6/20

_____
**John Z. Lee**
**United States District Judge**